HEZEKIAH WINSLOW *vs.* ENOCH CROCKER & *Trustee.*

If shares of an incorporated bank stand in the name of the wife, the husband has power to transfer them by his own act.

Where the husband sells and transfers bank shares standing in the name of the wife, and the purchaser gives his negotiable note therefor running to the wife, and there is no fraud in the transaction; he cannot be holden as the trustee of the husband.

THE facts stated in the answer of *Ezekiel Day,* who was summoned as trustee, appear in the opinion of the Court.

*Daveis,* for the plaintiff, contended, that the bank shares, while standing in the name of *Mrs. Crocker,* were her husband's property, and subject to the payment of his debts. The transfer of the shares to *Day,* makes him liable to pay *Crocker* the value. The giving of the notes to *Mrs. Crocker,* is no payment to him; the debt remains due, and the trustee must be charged. 2 *Kent,* 137; *Schuyler* v. *Hoyle,* 5 *Johns. C. R.* 196; *Sturdivant* v. *Frothingham,* 1 *Fairf.* 100; *Bullard* v. *Briggs,* 7 *Pick.* 538; *Keith* v. *Woombell,* 8 *Pick.* 211; *Shuttlesworth* v. *Noyes,* 8 *Mass. R.* 229. So too if the transaction was fraudulent as to the creditors of *Crocker,* the giving of a negotiable note even to him would not destroy the liability of the trustee. *Gardiner Bank* v. *Hodgdon,* 2 *Shepley,* 453.

*Adams,* for the trustee, argued, that if the note to *Mrs. Crocker* survived to her, then the shares are paid for by the note and the trustee must be discharged. If the note is the property of the husband, giving the note to the wife is the same as giving it to him. The trustee cannot be charged in consequence of having given a negotiable note. *Stat.* 1821, *c.* 61, § 15. And the result is the same if the whole transaction be fraudulent against creditors. The

shares then remain the property of *Mrs. Crocker,* and may be attached and sold. 6 *Dane,* 494 ; *Chitty on Bills, (8th Ed.)* 108, 460 ; 1 *Dane,* 350, 386 ; 2 *Stark. on Ev.* 248 ; *Wood* v. *Bodwell,* 12 *Pick.* 268 ; *Kelley* v. *Bowman, ib.* 383 ; *Guild* v. *Holbrook,* 11 *Pick.* 101. In the case cited for the plaintiff, from 8 *Mass. R.* 229, the note was not negotiable. Here it is.

The opinion of the Court was by

EMERY J. — It has been strenuously insisted, that the trustee should be holden upon his disclosure. The facts by him stated are, that his son in law, the defendant, having made extensive purchases of valuable land, and having notes due to him to great amount, and having given notes which, as the trustee says, the said *Crocker* was anxious to meet, the supposed trustee purchased of him shares, which were his wife's, in some banks, and some real estate for which he paid the defendant at the time. For the bank shares he gave his negotiable promissory notes the 3d of *March,* 1837, excepting that for one of the shares in the Bank of *Portland* he had purchased and paid for long before the service of the trustee process.

And the trustee represents that he understood *Crocker* to say, he sold said bank stock for the purpose of meeting from the proceeds of sale the payment in whole or in part of certain land notes of said *Crocker,* which were to become due in *August,* previous to the time of the disclosure. The trustee represents, that *Crocker* knew that *Day* had bought and was buying at that time bank shares, and that *Crocker* applied to him to purchase his shares in the *Casco* and *Canal Bank,* for he wished out of them, to pay some land notes which he stated would become due in *August* before mentioned ; and that at the time of the purchase, *Crocker* so far as the trustee knew, was solvent, and paid all his notes when payable, and presented for payment. And that *Crocker* informs the trustee, that if he, *Crocker,* could sell his property, he could pay his debts, and have a handsome estate left. And of this, *so far as the trustee knows, being his situation, the trustee does not doubt.*

The notes were made payable to *Ellen Crocker,* the said *Day's* daughter, or her order, and delivered to her husband, the defendant,

*Crocker.* Why the notes were given to *Ellen*, rather than to her husband, the supposed trustee professes not to know, unless it was done so, because the shares were hers. The trustee states, that he made the offer of the prices stated in the disclosure to *Crocker*, and after he had made endeavors to obtain more, and not succeeding, he accepted the offer.

It is urged, that here is a trust or credit in *Day's* hands for the benefit of *Mrs. Crocker.* That the original meaning of the legislature in discharging one of obligation as trustee, by reason of giving a negotiable note was not intended to protect a voluntary assignment by a husband of his wife's property; that there is no magic in a negotiable note; and refers to *Gardiner Bank* v. *Hodgdon,* 2 *Shepley,* 453. That was a bill in equity. Fraud was alleged, and satisfactorily proved as to the personal estate, which was left in the possession of the vendor.

But in the present case, we can only judge from the answers of the supposed trustee, and whatever may have induced the legislature to make the provision to relieve one from being holden in the character of trustee, when he has given a negotiable note, it would ill become the Court to attempt to repeal the act, by a decision directly in the face of the exemption. There is nothing in the disclosure to fix the belief that the case of this debtor deprived him of the right to sell the property in shares standing in his wife's name. At what time those shares were so placed in her name is not apparent, nor would it be material, because it is not a case of survivorship of the wife. And we cannot undertake to limit the marital rights in such choses in action. His transfers in the absence of fraud must be deemed effectual to all intents during the coverture. We are therefore irresistibly led to the conclusion, that upon this disclosure, the alleged trustee must be discharged.